No. 23-3058

_____

In the United States Court of Appeals for the Third Circuit

_____

Defense Distributed; Second Amendment Foundation, Inc.,
*Plaintiffs—Appellants,*

v.

Attorney General of New Jersey,
*Defendant—Appellee.*

_____

Appeal from the United States
District Court for the District of New Jersey
Case No. 3-21-cv-9867

_____

Petition for Panel Rehearing and Rehearing *En Banc*

_____

Daniel L. Schmutter
Hartman & Winnicki, P.C.
74 Passaic Street
Ridgewood, New Jersey 07450
(201) 967-8040

Josh Blackman
Josh Blackman LLC
1303 San Jacinto Street
Houston, Texas 77002
(202) 294-9003

Chad Flores
Flores Law PLLC
917 Franklin Street,
Suite 600
Houston, Texas 77002
(713) 364-6640

Counsel for Appellants

# Table of Contents

Table of Contents..................................................................i

Table of Authorities ............................................................ii

Rule 35 Statement .............................................................. 1

Statement of the Case .......................................................... 5

Argument .......................................................................8

I.  The venue decision's Fifth Circuit contradiction warrants rehearing. ..........8

    A.  The comity holding inverts comity's function...................................9

    B.  The law-of-the-case holding is circular. .............................................11

II.  The Second Amendment standing decision warrants rehearing. ................. 13

    A.  The panel conflated standing with the merits. ................................... 13

    B.  The Second Amendment, like the First, protects both publishers and recipients...................................................................... 14

III.  The First Amendment pleading decision warrants rehearing. .................... 15

    A.  The panel decided a threshold issue the Attorney General waived. .. 16

    B.  The pathbreaking test for computer code's First Amendment coverage is wrong and divisive......................................................... 17

    C.  The panel applied its test with heightened scrutiny—demanding facts not required and ignoring facts actually pled. ........................... 19

Conclusion ....................................................................20

# Table of Authorities

## Cases

*Bantam Books, Inc. v. Sullivan,*
  372 U.S. 58 (1963) ................................................................ 14

*Brown v. Ent. Merchs. Ass'n,*
  564 U.S. 786 (2011) ............................................................. 3, 18

*Christianson v. Colt Indus. Operating Corp.,*
  486 U.S. 800 (1988) ............................................................ 11, 12

*City of Cincinnati v. Discovery Network, Inc.,*
  507 U.S. 410 (1993) ................................................................ 18

*Craig v. Boren,*
  429 U.S. 190 (1976) ................................................................ 15

*Defense Distributed v. Bruck,*
  30 F.4th 414 (5th Cir. 2022) ............................................... *passim*

*Defense Distributed v. Platkin,*
  48 F.4th 607 (5th Cir. 2022) ........................................ 1, 2, 10, 12

*Defense Distributed v. Platkin,*
  55 F.4th 486 (5th Cir. 2022) ......................................... 2, 10, 12

*Greenlaw v. United States,*
  554 U.S. 237 (2008) ................................................................ 16

*Hall v. Hall,*
  584 U.S. 59 (2018) ................................................................ 10

*Hilton v. Guyot,*
  159 U.S. 113 (1895) .................................................................. 9

*Hunt v. Wash. State Apple Advert. Comm'n,*
432 U.S. 333 (1977) ................................................................. 15

*Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Bos.,*
515 U.S. 557 (1995) ...............................................................3, 18

*In re United States,*
273 F.3d 380 (3d Cir. 2001) ....................................................... 9

*Junger v. Daley,*
209 F.3d 481 (6th Cir. 2000) ..................................................3, 17

*Lujan v. Defs. of Wildlife,*
504 U.S. 555 (1992) ................................................................. 13

*Spokeo, Inc. v. Robins,*
578 U.S. 330 (2016) ...............................................................3, 13

*United States v. Dowdell,*
70 F.4th 134 (3d Cir. 2023) ...................................................... 16

*United States v. Sineneng-Smith,*
590 U.S. 371 (2020) ................................................................. 16

*United States v. Stevens,*
559 U.S. 460 (2010) ...............................................................3, 18

*Universal City Studios, Inc. v. Corley,*
273 F.3d 429 (2d Cir. 2001) ...................................................3, 17

*Virginia v. Am. Booksellers Ass'n, Inc.,*
484 U.S. 383 (1988) ................................................................. 14

*Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council,*
425 U.S. 748 (1976) ................................................................. 15

**Statutes**

N.J. Stat. § 2C:39-9(l)(2) ...................................................................................... 6, 14

**Other Authorities**

9A Charles Alan Wright & Arthur R. Miller, et al., Federal Practice & Procedure
§ 2382 (3d ed. West 2024) ............................................................................ 10

**Rule 35 Statement**

Rehearing en banc is warranted because the panel decision conflicts with controlling Supreme Court and Third Circuit precedent on three exceptionally important recurring questions.

## I. The venue decision's Fifth Circuit contradiction warrants rehearing.

The first issue is whether a transferee court may disregard a sister circuit's published mandamus decision vacating an intercircuit transfer. That issue is of exceptional importance to the orderly administration of federal courts and to the availability of meaningful mandamus review in intercircuit transfer disputes.

The panel held that physical transfer "created two separate suits" and stripped the Fifth Circuit's mandate of any further operative force. Op. at 11-16. This holding creates as severe a circuit split as there ever could be.

First and foremost, the panel's refusal to send the case back to Texas puts the Third Circuit in direct conflict with *Defense Distributed v. Bruck*, 30 F.4th 414 (5th Cir. 2022) (Ex. C). *Bruck* held in this very case, binding every party now before this Court, that the dispute must proceed in Texas and ordered vacatur and return. The panel decision also conflicts with the concurring opinion of Judges Ho and Elrod in *Defense Distributed v. Platkin*, 48 F.4th 607, 607 (5th Cir. 2022) (Ex. D.) ("we respectfully ask the District of New Jersey to honor our decision in *Defense*

*Distributed [v. Bruck]* and grant the request to return the case back to the Western District of Texas—consistent with the judiciary's longstanding tradition of comity, both within and across the circuits, as repeatedly demonstrated by district courts nationwide."), and Judge Jerry Smith's opinion for the court in *Defense Distributed v. Platkin*, 55 F.4th 486 (5th Cir. 2022) (Ex. E).

"When faced with inter-circuit splits in jurisdiction, courts have returned the cases to the transferor district in the interest of comity." *Id.* at 496. "The refusal of the District of New Jersey to retransfer is unprecedented in that regard." *Id.* "More importantly, the effect of that decision permits a New Jersey district court functionally to nullify a Fifth Circuit decision." *Id.* By affirming, the panel necessarily makes nullification of *Bruck* and its progeny the law of this Circuit.

## II. The Second Amendment standing decision warrants rehearing

The second issue is whether standing to challenge a criminal ban on *communicating about* lawful firearm self-manufacture requires that a plaintiff first alleges an attempted act of self-manufacture. It is exceptionally important because it determines whether such bans on *communication* can be insulated from scrutiny by demanding downstream conduct that the ban itself deters.

The panel held Plaintiffs cannot sue about the right of communication unless someone first tries and fails to make a firearm. Op. at 16-19. That collapses standing

into the merits, contrary to *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). Valid or not, Plaintiffs have standing to claim that the Second Amendment protects their exchange of these files.

## III. The First Amendment pleading decision warrants rehearing.

The third issue is whether information-laden computer files are presumptively protected First Amendment expression, or whether coverage must instead be established through a fact-specific, file-by-file showing of "indicia of expressiveness" at the pleading stage. That issue is of exceptional importance to First Amendment doctrine and to the standards governing every code-adjacent publication claim.

The panel held that computer code lacks presumptive First Amendment protection, requiring complaints to plead granular technical specifics to trigger scrutiny. Op. at 22-38. This holding splits from the Second and Sixth Circuits, which treat code as presumptively protected expression without threshold expressiveness proofs. *Universal City Studios, Inc. v. Corley*, 273 F.3d 429, 449 (2d Cir. 2001); *Junger v. Daley*, 209 F.3d 481, 484 (6th Cir. 2000). It further conflicts with Supreme Court precedents prohibiting gatekeeping tests that condition coverage on articulating a particularized message or non-functional purpose, *Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Bos.*, 515 U.S. 557 (1995), *Brown v. Entertainment Merchants Ass'n*, 564 U.S. 786 (2011), and *United States v. Stevens*, 559 U.S. 460 (2010).

In addition to those legal conflicts, the panel compounded all of this by affirming Rule 12 dismissal on a coverage theory the AG expressly disclaimed below. He told the district court it "need not decide" that threshold coverage issue, proceeded on the assumption that protected expression was at stake, and never asked for dismissal on the ground that is now the opinion's centerpiece. That kind of procedural miscarriage, in a case of such doctrinal magnitude, implicating years of suppressed publication and unresolved upstream First and Second Amendment questions, independently warrants this Court's intervention.

## Statement of the Case

This appeal challenges the New Jersey Attorney General's long-running censorship of Second Amendment speech. It implicates fundamental speech rights protected in parallel by both the First and Second Amendments and exposes "the abusive manipulation of federal court procedures" designed to evade merits review, bringing "issues that implicate not only the parties' interests but those of the judicial system itself." *Defense Distributed v. Bruck*, 30 F.4th 414, 427 (5th Cir. 2022).

Plaintiffs' suit challenges the AG's civil and criminal censorship of digital firearms information—computer files containing First Amendment speech about the Second Amendment. App.256-265. "Each and every computer file at issue has these values in the abstract, apart from any application that the information's recipient might choose to devote it to." *Id.* "Akin to blueprints, each computer file's sole purpose is to supply information in the abstract." *Id.* These computer files "do not produce anything automatically." App.257. "They are not functional software." *Id.* "They do not self-execute." *Id.* "They are mere information stores." *Id.* Hence, they are "constitutionally protected speech in every respect." App.258.

The Attorney General attacks Defense Distributed's publications through dual-track civil and criminal censorship. Civilly, he suppresses speech using cease-and-desist demands, lawsuits, and threats against third-party service

providers. App.284–86. Criminally, he wields an unprecedented speech crime, N.J. Stat. § 2C:39-9(*l*)(2), outlawing the mere publication of "digital instructions" that "may be used" for covered functions. App.172–73. His aim is unmistakable: to anyone learning from these files, "we will come after you". App.174–75.

Plaintiffs' complaint challenges the AG's dual-track civil and criminal censorship with coordinated constitutional claims. Under the First Amendment, his campaign is unconstitutional suppression of protected speech—by prior restraint and content- and viewpoint-based restrictions. Under the Second Amendment, the campaign is independently unconstitutional because it infringes the exchange of firearm information that is part and parcel of the right to keep and bear Arms.

Three district-court rulings are at issue here. First, the court refused to return this case to Texas after the Fifth Circuit held a prior sever-and-transfer unlawful and directed vacatur and return, instead declining to follow the Fifth Circuit's mandate and re-running § 1404(a) to keep the case in New Jersey. App.58–59; App.59–71; App.75, 83. Second, the court dismissed Plaintiffs' Second Amendment claim for lack of Article III standing, reasoning that the complaint did not allege a concrete injury tied to any plaintiff's or member's ability to make a firearm. App.84. Third, the court dismissed Plaintiffs' First Amendment claims at the pleading stage on a threshold "coverage" theory, holding the complaint failed to plausibly allege that the

regulated "digital firearms information" is protected speech, and it dismissed without reaching Plaintiffs' distinct civil-censorship theory. App.84; App.249–65; App.284–86.

**Argument**

Appellants Defense Distributed and the Second Amendment Foundation petition for panel and *en banc* rehearing of this case. The panel opinion commits three extraordinary errors with consequences extending far beyond this case. The venue ruling destabilizes intercircuit transfer practice nationwide. The standing ruling alters the boundary between jurisdiction and merits in constitutional litigation. The pleading ruling creates a novel First Amendment threshold for code-based speech— one that conflicts with decisions recognizing source code as protected expression and with ordinary Rule 12 standards. At minimum, these issues warrant rehearing by the panel. They more appropriately warrant *en banc* review.

## I.  The venue decision's Fifth Circuit contradiction warrants rehearing.

The district court refused to return this case to Texas after the Fifth Circuit held the sever-and-transfer unlawful and directed vacatur and return, declining to follow the sister-circuit mandate and re-running § 1404(a) to keep the case in New Jersey. *See* Op. at 11–16. The panel affirmed, holding that the transfer itself "created two separate suits," stripped the Fifth Circuit of any lasting "power," and rendered the mandamus vacatur-and-return decision non-operative in the transferee court. Op. at 12–14. Rehearing is warranted because that rule is circular, inverts intercircuit

comity's function, and destabilizes transfer practice by permitting a transferee court to nullify a sister circuit's published decision in the same case.

### A. The comity holding inverts comity's function.

The panel's comity analysis begins and ends with generalities: comity is "not a rule of law, but one of practice," and it "persuades; but it does not command." Op. at 13. From that premise, the panel reasoned that the Fifth Circuit's decision amounted to "only a non-binding request," so the transferee court was free to "substitute [its] own" analysis, and the panel could not say the district court abused discretion by refusing. Op. at 8-14. That misconception of comity proves too much.

By definition, every proper instance of comity involves a decision that is in a sense "nonbinding." That's the whole point of comity. It exists to govern instances where, as here, one court's somewhat "nonbinding" decision should nonetheless be followed by courts later in the same case, out of recognition for serious Article III concerns. *See, e.g.*, *Hilton v. Guyot*, 159 U.S. 113, 163–64 (1895). Comity manages relations where binding power supposedly ends, correcting unlawful transfers without cross-circuit conflict or irrevocable forum manipulation. This Court already recognizes that function. In *In re United States*, 273 F.3d 380 (3d Cir. 2001), the Court praised a district judge's accommodation of a sister court's request precisely because it prevented "unseemly tension between federal jurisdictions." *Id.* at 382 n.1

The panel's reasoning fails because it treats comity as optional precisely when comity does its only work. Properly understood, comity supplies a rule of decision here, not a rhetorical flourish. If not because of de novo agreement then at least out of the Article III respect that comity represents, both the District of New Jersey and this Court should defer to the Fifth Circuit's decision in *Bruck*, *Defense Distributed v. Platkin*, 48 F.4th 607 (5th Cir. 2022), and *Defense Distributed v. Platkin*, 55 F.4th 486 (5th Cir. 2022), and accept the Western District of Texas's retransfer request without second-guessing or relitigating the venue debate anew.

The Fifth Circuit's decisions in this case—not just one but several, reflecting the views of multiple independent panels—reflect the settled tradition that is correct and should apply here: the transferor court requests return and the transferee court honors the request. The panel's contrary approach "permit[s] a New Jersey district court functionally to nullify a Fifth Circuit decision." *Id.* at 496.

The panel also endorsed reliance on "now-consolidated claims" to justify refusing return. Op. at 16. But consolidation is a case-management tool; it cannot cure an unlawful venue maneuver because "actions do not lose their separate identity because of consolidation." 9A Charles Alan Wright & Arthur R. Miller, et al., Federal Practice & Procedure § 2382 (3d ed. West 2024); *accord Hall v. Hall*, 584 U.S. 59

(2018). The panel never confronted this rule despite it having been fully briefed. *See* Br. of Appellants at 15 & n.4.

Critically, *Bruck* left no live venue issue for the District of New Jersey to decide anew *regardless of how one views severance*. Part B of the *Bruck* decision condemned the transfer because severance was improper; but Part C independently held that "even setting aside severance," "any transfer … in whole or in part" was an abuse of discretion. *Id.* at 431–36. That independent holding defeats the panel's premise that a post-transfer "mismatch" makes comity irrelevant. *Bruck* anticipated partial-transfer permutations and still deemed any transfer an abuse. The transferee court was therefore not free to treat the matter as open and run § 1404(a) again.

## B.     The law-of-the-case holding is circular.

The panel's law-of-the-case holding is circular. It rejected the Fifth Circuit's mandate because the physical transfer "created two separate suits," ending the Fifth Circuit's "power." Op. at 12–13. This treats the downstream effects of an unlawful transfer as the reason the decision vacating that transfer cannot apply. Under this logic, an unlawful transfer becomes self-validating once executed, destroying the stability transfer doctrine guarantees.

Supreme Court transfer law rejects that kind of self-entrenchment. *Christianson v. Colt Industries Operating Corp.*, 486 U.S. 800 (1988), held that law-of-

the-case principles apply to prevent perpetual "jurisdictional ping-pong." Id. at 816-19. It requires the transferee court to adhere to the transfer decision absent clear error and manifest injustice—not to treat the prior adjudication as a nullity because the case moved. *Id.* The panel's approach cuts directly against Christianson's institutional command of finality and disciplined administration in transfer litigation.

The Fifth Circuit's *Bruck* decision is "plausible" and therefore earns law of the case status. In this respect as well, Judge Ho's concurring opinion in *Defense Distributed v. Platkin*, 48 F.4th 607 (5th Cir. 2022), is correct and should be followed: *Bruck* is both "the law of the circuit as well as the case." *Id. Platkin*'s later main decision accorded: "*Bruck* remains the law of this circuit: Plaintiffs' claims against NJAG should be heard in the Western District of Texas." *Platkin*, 55 F.4th at 495.

At bottom, the panel insulated the re-done § 1404(a) ruling from real review by treating factor-checking as dispositive. Instead of engaging whether the district court weighed the factors correctly, the panel affirmed because the court "conducted a methodical analysis" and gave "thorough consideration," so "we cannot say" there was an abuse of discretion. Op. at 15–16. The practical holding is plain: the Third Circuit has now overturned the Fifth Circuit in the exact same case.

**II.    The Second Amendment standing decision warrants rehearing.**

The district court dismissed Plaintiffs' Second Amendment claim for lack of standing, and the panel affirmed on the ground that no plaintiff or member "attempted to or was prevented from 3D printing a firearm." Op. at 17–18. Rehearing is warranted because that downstream-attempt requirement misidentifies the injury in a pre-enforcement challenge to an upstream ban, collapses merits into jurisdiction, and departs from settled standing principles applied across constitutional litigation.

**A.    The panel conflated standing with the merits.**

The panel treated the absence of an "attempt" to 3D print a firearm as dispositive of Article III standing. Op. at 17–18. That merges two distinct questions: whether Plaintiffs alleged an injury in fact, and whether the Second Amendment protects the conduct Plaintiffs seek to engage in. *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). Injury in fact turns on whether Plaintiffs face a concrete, imminent restraint backed by enforcement threats. *See, e.g.*, *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). Plaintiffs alleged exactly that: New Jersey's regime prohibits and threatens enforcement against distributing and receiving the files at issue, and Plaintiffs refrain accordingly. App.172–75; App.284–86. At issue here is the right to self-manufacture firearms and to maintain them. Both are obviously implicated by a

law restricting the actual production of a "firearm, firearm receiver, magazine, or firearm component," and both are likewise implicated by a law restricting speech about "produc[ing] a firearm, firearm receiver, magazine, or firearm component." N.J. Stat. § 2C:39-9(l)(2). *See id.* Whether these files are protected under the Second Amendment is a merits question about the Amendment's scope, not a jurisdictional prerequisite that can be avoided by demanding a different, downstream act.

**B.    The Second Amendment, like the First, protects both publishers and recipients.**

A publisher challenging a publication restraint need not plead that readers attempted to act on suppressed material. *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 64 n.6 (1963). Plaintiffs' Second Amendment theory mirrors the First. The State targets the upstream dissemination and acquisition of technical information integral to keeping and bearing Arms. App. 299. That theory survives or fails on the merits. But standing is established because the State threatens sanctions for Appellants' own intended conduct. *Va. v. Am. Booksellers Ass'n, Inc.*, 484 U.S. 383, 392–93 (1988); *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158–59 (2014). The panel's downstream "attempt" requirement forecloses pre-enforcement review, forcing citizens to choose between self-censorship and prosecution.

The panel's rule also conflicts with vendor/distributor standing. Distributors routinely may challenge restrictions on their distribution by asserting the rights of willing recipients. *Craig v. Boren*, 429 U.S. 190, 192–97 (1976); *Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council*, 425 U.S. 748, 756–57 (1976). The panel's rule effectively nullifies that doctrine by requiring the recipient to attempt a later act before a distributor may challenge an upstream distribution/receipt ban.

Third, it conflicts with associational standing. An association may sue when at least one member would have standing in their own right and the claim and relief are otherwise proper. *See, e.g.*, *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977). The complaint alleges SAF members seek to receive and share the proscribed files but refrain due to the statute and credible enforcement threats. App.172–75; App.253–54. The panel's "attempt" condition is not an Article III requirement for those members; it is a merits-laden act requirement that rewrites injury-in-fact for upstream regulation.

## III. The First Amendment pleading decision warrants rehearing.

The district court dismissed Plaintiffs' First Amendment claims at the pleading stage on a threshold "coverage" theory, holding the complaint did not plausibly allege that the regulated "digital firearms information" is protected speech. Op. at 34–38. The panel affirmed, adopting a fact-specific "indicia of

expressiveness" checklist for code and ending the case because the complaint allegedly failed to plead the technical details the panel deemed necessary to trigger First Amendment coverage. Op. at 34–38. Rehearing is warranted because the panel decided a waived theory, imposed a novel merits-loaded pleading gate inconsistent with ordinary Rule 8 and First Amendment coverage doctrine, and effectively insulates civil and criminal censorship of publication from meaningful review.

### A. The panel decided a threshold issue the Attorney General waived.

The panel affirmed dismissal on a First Amendment "coverage" theory the Attorney General affirmatively waived. His Rule 12(b)(6) motion expressly disclaimed the issue, instructing the district court it "need not decide" if the files are protected speech and assuming they constitute "protected expression". Doc. 181-1 at 8 & n.2. He did not argue, at any point, that the files fall outside the First Amendment entirely. Because he litigated only downstream questions like scrutiny and tailoring, the panel erred by deciding the threshold coverage question.

A court may not affirm a Rule 12 dismissal on a ground the movant intentionally waived. *See, e.g.*, *United States v. Dowdell*, 70 F.4th 134, 145 (3d Cir. 2023). That party-presentation principle is "the bedrock of our adversarial system." *Id.*; *accord United States v. Sineneng-Smith*, 590 U.S. 371, 375–79 (2020); *Greenlaw v. United States*, 554 U.S. 237, 243–44 (2008). It should apply here with full force.

Plaintiffs raised this defect in their main brief. Appellants' Br. 35–36. The panel did not engage it. Its First Amendment disposition nonetheless depends entirely on the waived theory. That error is independently sufficient to warrant rehearing.

**B.  The pathbreaking test for computer code's First Amendment coverage is wrong and divisive.**

Even if coverage were properly at issue, the panel's test for resolving it warrants rehearing. The panel held that whether code "enjoys First Amendment protection requires a fact-based and context-specific analysis" governed by a multi-factor checklist: "the technical nature of the code," "how that code is used in context," "who is communicating through the code," "for what purpose or purposes the computer code operates," and "what, if anything, the code communicates." Op. at 34. It then declared that "purely functional code with no expressive purpose, use, or intent is simply not covered by the First Amendment." Op. at 30. That test is wrong on three independent grounds.

The panel fractures appellate consensus on code as speech. Other circuits have treated code as speech because it conveys information, even when operational. *Junger v. Daley*, 209 F.3d 481, 484 (6th Cir. 2000); *Universal City Studios, Inc. v. Corley*, 273 F.3d 429, 449 (2d Cir. 2001). The panel's novel "functionality" threshold rejects this baseline. It creates a clean circuit split dictating whether speakers using code receive any First Amendment scrutiny at all.

It also conflicts with Supreme Court coverage principles. The panel demanded that speakers plead "what ideas" their files convey and "what, if anything, the code communicates." Op. at 34, 37. But the First Amendment does not condition coverage on the ability to articulate a particularized message. *Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Bos.*, 515 U.S. 557, 569 (1995). Nor does operational character defeat coverage. Video games are code-driven, interactive, and mechanically operational; the Supreme Court treated them as fully protected expression without a functionality exception. *Brown v. Ent. Merchs. Ass'n*, 564 U.S. 786, 790 (2011). Functionality may bear on tailoring; it does not justify denying coverage at the courthouse door. *See, e.g.*, *City of Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 418–22 (1993) (the commercial or functional character of expression affects the *level* of First Amendment protection, not whether coverage applies in the first instance).

The panel's rule also creates a new unprotected category without the required historical pedigree. The panel's "purely functional code" exclusion is a categorical denial of First Amendment coverage. The Supreme Court forecloses that move absent a long-settled tradition of exclusion. *United States v. Stevens*, 559 U.S. 460, 470–72 (2010). No such tradition exists for code. The ruling is doctrinally destabilizing and will invite states to re-label disfavored speech as "functional" to escape scrutiny.

### C. The panel applied its test with heightened scrutiny—demanding facts not required and ignoring facts actually pled.

The panel's application of its coverage test compounded the legal error. It demanded pre-discovery technical specifics the complaint was not required to provide, then disregarded the factual allegations the complaint actually contained.

The panel clearly erred by demanding facts Rule 12 does not require. It faulted the complaint for omitting file-type specifications, usage details, and the ideas conveyed. Op. at 37. Rule 8 requires a plausible claim, not a technical dossier. That converts the pleading stage into a coverage-merits proceeding before discovery—a burden imposed nowhere else in First Amendment litigation.

Worse, the panel clearly erred again by disregarding what the complaint actually alleged. It dismissed Plaintiffs' allegations as "conclusory," set aside the complaint's description of the files as "important expression of technical, scientific, artistic, and political matter," and declared the complaint "left with nothing sufficient." Op. at 37--38. That is wrong. The complaint identified specific files, described their communicative content, and alleged their expressive character in detail. "Setting aside" rather than crediting those allegations inverts Rule 12.

Plaintiffs' refusal to amend changes nothing. A plaintiff need not amend to plead what the law does not require, and certainly need not amend to address a theory

the State waived. The panel's use of that refusal to justify dismissal with prejudice, Op. at 38, compounds the party-presentation violation rather than curing it.

## Conclusion

The petition should be granted.

Respectfully submitted,

*Chad Flores*

_____

Daniel L. Schmutter
Hartman & Winnicki, P.C.
74 Passaic Street
Ridgewood, New Jersey 07450
(201) 967-8040

Josh Blackman
Josh Blackman LLC
1303 San Jacinto Street
Houston, Texas 77002
(202) 294-9003

Chad Flores
Texas Bar No. 24059759
Flores Law PLLC
917 Franklin Street, Suite 600
Houston, Texas 77002
(713) 364-6640

Counsel for Appellants

# Certifications

1.   At least one of the attorneys whose name appears on this brief is a member of the bar of this Court.

2.    The text of this document's electronic version matches its paper copies.

3.   A virus detection program, BitDefender Endpoint Security Tools major version 6, has been run on the file and no virus was detected.

4.   This document complies with the type-volume limit of the Federal Rules of Appellate Procedure 32 because it contains 3,880 not-exempted words.

5.   This filing complies with the typeface and type-style requirements of the Federal Rules of Appellate Procedure because it uses a proportionally spaced typeface, Equity OT 14 point.

6.   On February 26, 2026, this filing was served on the opposing party's counsel by delivering it through the Court's electronic docketing system to the following registered user of the system:

Renee Greenberg
Erin Hodge
Timothy Sheehan

*/s/ Chad Flores*
Chad Flores