first instance in the district court—thus raising it for the first time on appeal." *Thomas v. Ameritas Life Ins. Corp.*, 34 F.4th 395, 402 (5th Cir. 2022).[5] Accordingly, we decline to reach this argument.

### C. Privileges or Immunities Clause Claim

[22] As Sivad-Home concedes, the Privileges or Immunities Clause protects a finite list of "uniquely federal rights," none of which she claims have been violated in this case. *Deubert v. Gulf Federal Sav. Bank*, 820 F.2d 754, 760 (5th Cir. 1987). Accordingly, we decline to address her argument on this issue.

### IV. CONCLUSION

For the foregoing reasons we AFFIRM the judgment of the district court.



**DEFENSE DISTRIBUTED; Second Amendment Foundation, Incorporated, Plaintiffs—Appellants,**

v.

**Matt PLATKIN, Attorney General of New Jersey, in his official capacity, Defendant—Appellee.**

**No. 22-50669**

United States Court of Appeals, Fifth Circuit.

FILED December 15, 2022

**Background:** Nonprofit and publisher of 3D printing files for gun filed suit against nine state Attorneys General, including New Jersey Attorney General (NJAG), asserting enforcement actions violated First Amendment and tortiously interfered with settlement agreement with United States Department of State. The District Court, Robert L. Pitman, J., 364 F.Supp.3d 681, granted motion by Attorneys General to dismiss for lack of personal jurisdiction, and plaintiffs appealed. The Court of Appeals, 971 F.3d 485, reversed and remanded as to NJAG. On remand, plaintiffs added State Department as defendant. The District Court, Pitman, J., 2022 WL 984870, granted NJAG's motion to sever claims against him and transfer them to District of New Jersey. The Court of Appeals, 30 F.4th 414, granted plaintiffs' mandamus petition and ordered District Court in Texas to request that district court in New Jersey transfer case back. After district court in New Jersey refused, plaintiffs moved for preliminary injunction against publication restraints imposed by NJAG. The United States District Court for the Western District of Texas, Robert L. Pitman, J., dismissed motion. Plaintiffs appealed.

**Holdings:** The Court of Appeals, Smith, Circuit Judge, held that:

(1) vacatur of severance-and-transfer order would not revive or recreate claims against NJAG in Western District of Texas, and

(2) amendment of complaint to re-add claims against NJAG would be futile.

Affirmed.

HAYNES, Circuit Judge, concurred in the judgment only.

---

**5.** *See Thomas*, 34 F.4th at 402 (explaining that "to preserve an argument for appeal, the argument (or issue) not only must have been presented in the district court, [but] a litigant must also press and not merely intimate the argument during proceedings before the district court.") (internal quotations and citation omitted).

**1. Federal Courts ⚖3581(1)**

The Court of Appeals reviews questions of law as to jurisdiction de novo.

**2. Federal Civil Procedure ⚖613.1**

Vacated orders are immediately null and void.

**3. Federal Civil Procedure ⚖613.1**

Typically, vacatur of a party-changing order automatically restores parties and claims to where they were before the vacated order.

**4. Federal Courts ⚖2945, 3794**

Vacatur, by Court of Appeals for the Fifth Circuit, of erroneous order of District Court for the Western District of Texas severing claims that digital file publisher and nonprofit asserted against New Jersey Attorney General (NJAG), including for violation of First Amendment, from claims they asserted against other defendant and transferring claims against NJAG to district court in New Jersey would not automatically revive or recreate claims against NJAG in district court in Texas, and, thus, would not restore Fifth Circuit courts' jurisdiction over claims against NJAG; completion of transfer of files to transferee district terminated transferor court's jurisdiction over transferred claims entirely, and Court of Appeals could not reconstitute claims that existed elsewhere, out-of-circuit. U.S. Const. Amend. 1; 28 U.S.C.A. § 1404(a).

**5. Federal Courts ⚖2902**

A court acting under the "interest of justice" section of the venue transfer statute may not transfer part of a case for one purpose while maintaining jurisdiction for another purpose; the section contemplates a plenary transfer of the entire case. 28 U.S.C.A. § 1404(a).

**6. Federal Courts ⚖2945**

When claims are severed and transferred under the "interest of justice" provision of the venue transfer statute, the severed case is transferred in its entirety while the retained case remains in its entirety in the transferor court. 28 U.S.C.A. § 1404(a).

**7. Federal Courts ⚖3587(1)**

Ordinarily, the Court of Appeals reviews the denial of a motion for leave to file an amended complaint for abuse of discretion; however, where the district court's denial of leave to amend was based solely on futility, the Court of Appeals applies a de novo standard of review. Fed. R. Civ. P. 15.

**8. Federal Courts ⚖3973**

It would be futile to grant nonprofit and publisher of 3D printing file for gun leave to amend their complaint to re-add claims against New Jersey Attorney General (NJAG) for violation of First Amendment and tortious interference with settlement agreement, after District Court for the Western District of Texas erroneously severed claims against NJAG and transferred them to district court in New Jersey; first-to-file rule, which served to maximize values of economy, consistency, and comity, precluded re-filing of claims against NJAG in transferor court while severed and transferred claims remained pending before transferee court in New Jersey, and NJAG was no longer party to remainder of case before transferor court. U.S. Const. Amend. 1.

**9. Federal Courts ⚖3931**

Under the first-to-file rule, when related cases are pending before two federal courts, the court in which the case was last filed may refuse to hear it if the issues raised by the cases substantially overlap.

**10. Federal Courts** ⚙═3932

Under the first-to-file rule, courts prophylactically refuse to hear a case raising issues that might substantially duplicate those raised by a case pending in another court.

**11. Federal Courts** ⚙═3931

The first-to-file rule is intended to maximize the values of economy, consistency, and comity.

**12. Courts** ⚙═90(2)

The "rule of orderliness" means that one panel of the Court of Appeals may not overturn another panel's decision, absent an intervening change in the law, such as by a statutory amendment, or the Supreme Court, or the Court of Appeals en banc.

See publication Words and Phrases for other judicial constructions and definitions.

**13. Federal Courts** ⚙═3852

Comity between courts is not a binding rule of law but one of practice, convenience, and expediency.

**14. Federal Courts** ⚙═3431

When a district court has incorrectly transferred a case outside of its circuit court's jurisdiction, the expectation is that the circuit court directs the transferor district court to request that the transferee district court return the case; this tradition neatly balances the jurisdictional powers of the separate circuits with a culture of mutual respect between the sister circuits.

---

Appeal from the United States District Court for the Western District of Texas, USDC No. 1:18-CV-637, Robert L. Pitman, U.S. District Judge

Chad Flores, Esq., Owen Joseph McGovern, Beck Redden, L.L.P., Houston, TX, Joshua Michael Blackman, Houston, TX, for Plaintiffs-Appellants.

Angela Cai, Jeremy M. Feigenbaum, Esq., Office of the Attorney General for the State of New Jersey, Trenton, NJ, Alexander Hardiman, Esq., Attorney, Pillsbury Winthrop Shaw Pittman, L.L.P., New York, NY, for Defendant-Appellee.

Before SMITH, BARKSDALE, and HAYNES, Circuit Judges.

JERRY E. SMITH, Circuit Judge:*

Plaintiffs Defense Distributed and the Second Amendment Foundation produce, and make accessible, information related to the 3D printing of firearms. The U.S. Government and various states have imposed restraints on the publication of that information. Since 2013, plaintiffs have challenged those restraints in federal courts as violating the First Amendment.

The instant case involves publication restraints that the defendant, first as Acting Attorney General, then as Attorney General, of New Jersey ("NJAG"), has placed on these plaintiffs.

The case has had a long journey through the justice system: This is the plaintiffs' third appeal to the Fifth Circuit. Plaintiffs initially filed in the Western District of Texas and included claims against the U.S. Department of State and NJAG. In the first appeal, we reversed the district court's decision that the NJAG was not subject to the court's personal jurisdiction. *Def. Distributed v. Grewal*, 971 F.3d 485, 488 (5th Cir. 2020), *cert. denied*, ––– U.S. ––––, 141 S. Ct. 1736, 209 L.Ed.2d 504 (2021).

On remand, the district court severed the claims against the State Department

---

* Judge Haynes concurs in the judgment only.

and NJAG and transferred the claims against NJAG to the District of New Jersey per 28 U.S.C. § 1404. On appeal, we held that that decision was a clear abuse of discretion and ordered the district court to vacate its sever-and-transfer order. Because the case against NJAG now resided in New Jersey, we ordered the district court to request that the New Jersey district court transfer the case back to the Western District of Texas. *Def. Distributed v. Bruck*, 30 F.4th 414, 421 (5th Cir. 2022). The New Jersey district court refused. *Def. Distributed v. Platkin* ("*Platkin-D.N.J.*"), Civ. Ac. No. 19-04753 (FLW), 2022 WL 2967304, at *1 (D.N.J. July 27, 2022).[1] In response, plaintiffs moved, in the Western District of Texas, for a preliminary injunction against the publication restraints imposed by NJAG. The district court entered a short order holding that it lacked jurisdiction to consider claims against NJAG and dismissed the preliminary-injunction motion. Plaintiffs appealed. Because this court no longer has the power to hear the case or grant the relief requested, we affirm that dismissal.

I.

Defense Distributed is a company that "produces and makes accessible information related to the 3D printing of firearms and publishes and distributes such information to the public." *Bruck*, 30 F.4th at 422 (quoting *Grewal*, 971 F.3d at 488). The U.S. Government and individual states have not looked kindly upon plaintiffs' distributing that information to the public. Accordingly, they have placed publication restraints on plaintiffs after "Defense Distributed published to the Internet computer assisted design ('CAD') files for a single-round plastic pistol." *Id.* at 421. Since 2013, plaintiffs have been engaged in substantial litigation focused on removing those publication restraints.[2] We have noted in *dictum* that the governments' actions "appear to be flagrant prior restraints." *Id.*

After initial litigation, the State Department "reached a settlement agreement that granted Defense Distributed a license to publish its files." *Id.* at 422. Next, a case was filed in the Western District of Washington by the attorneys general of nine states "to enjoin the State Department from authorizing the release of Defense Distributed's files" under the settlement agreement. *Id.* Separately and concurrently, Defense Distributed and associated plaintiffs challenged the enforcement actions of certain states' attorneys general, including NJAG. *Id.*

In the present case, plaintiffs initially sued in 2018 in the Western District of Texas to enjoin NJAG. They filed an amended complaint joining the U.S. Department of State as a defendant, alleging that the Department breached the settlement agreement. The district court initially dismissed the claims against NJAG, holding that the court did not have personal jurisdiction. *See Grewal*, 971 F.3d at 488–90.

Plaintiffs then sued in New Jersey, raising similar claims against NJAG and add-

---

1. The New Jersey district court rejected plaintiffs' request for reconsideration and second motion to transfer. *See Def. Distributed v. Platkin*, No. 19-cv-4753, 2022 WL 14558237, at *6 (D.N.J. Oct. 25, 2022).

2. "Defense Distributed published the CAD files to the Internet for a few months from December 2012–May 2013 before the State Department claimed that to do so violated [the Department's] International Traffic in Arms Regulations ('ITAR')." *Bruck*, 30 F.4th at 421 n.1 (first citing *Def. Distributed v. U.S. Dep't of State*, 838 F.3d 451, 455 (5th Cir. 2016); and then citing *U.S. Dep't of State*, 838 F.3d at 461–63 ( Jones, J., dissenting)).

ing five plaintiffs [3] to the action against NJAG. *Platkin-D.N.J.*, 2022 WL 2967304, at *3. On appeal, our circuit held that the district court had improperly dismissed NJAG for want of personal jurisdiction grounds. *Grewal*, 971 F.3d at 496.

On remand, the district court granted NJAG's motion to sever the claims against him and transferred that portion of the case to the District of New Jersey. Plaintiffs did not attempt to stay that transfer, *see Bruck*, 30 F.4th at 425, and, as a result, the case was consolidated with the other lawsuit filed by plaintiffs in New Jersey. *Platkin-D.N.J.*, 2022 WL 2967304, at *4.

Plaintiffs appealed again, and we held that the sever-and-transfer order was a clear abuse of discretion. *Bruck*, 30 F.4th at 433. Nevertheless, because the transfer had already occurred to a court outside the jurisdiction of the Fifth Circuit, we could not order its return. *Id.* at 423–24. Instead, relying on *In re Red Barn Motors, Inc.*, 794 F.3d 481 (5th Cir. 2015) (per curiam), we issued a writ of mandamus to vacate the joint sever-and-transfer order and directed the district court to request that the transferee district court return the case. *Bruck*, 30 F.4th at 423–24, 436–37. We then stated that the district court, post-return, should "reconsolidate Defense Distributed's case against the NJAG back into the case still pending against the State Department" and should decide the merits of a preliminary injunction expeditiously. *Id.* at 437.

Despite principles of comity and the desire to prevent "unseemly tension between federal jurisdictions," *In re United States*, 273 F.3d 380, 382 n.1 (3d Cir. 2001), the New Jersey district court refused to transfer the case back, relying heavily on the dissenting opinion in *Bruck*. *Platkin-D.N.J.*, 2022 WL 2967304, at *10–12, *16 (repeatedly citing *Bruck*, 30 F.4th at 437–40 (Higginson, J., dissenting)).

So plaintiffs have sought relief against NJAG in our circuit again, moving for a preliminary injunction in the remaining case against the State Department. The district court found it lacked jurisdiction because NJAG had been terminated from the case against the State Department in this circuit. Because NJAG was not a party to the suit, the district court found it had no power to adjudicate.

Plaintiffs appealed. In the meantime, two judges on the motions panel in this case requested that the New Jersey district court return the case that our court has held to be erroneously transferred. *Def. Distributed v. Platkin*, 48 F.4th 607, 607 (5th Cir. 2022) (per curiam) (Ho, J., joined by Elrod, J., concurring). On October 25, 2022, the New Jersey district court responded to a motion for reconsideration and a second motion to transfer filed by plaintiffs, denying the requests. *Platkin*, 2022 WL 14558237, at *6.

II.

**[1]** The key question centers on "[n]ot favoritism, nor even corruption, but *power*." *Patchak v. Zinke*, ––– U.S. ––––, 138 S. Ct. 897, 910, 200 L.Ed.2d 92 (2018) (plurality opinion) (citation omitted) (quoting *Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211, 228, 115 S.Ct. 1447, 131 L.Ed.2d 328 (1995)). Specifically, the question is whether the district court has the power to adjudicate plaintiffs' request for a preliminary injunction, regardless of the transfer. We have jurisdiction to review denials of preliminary injunctions under 28 U.S.C. § 1292(a)(1). "We review questions of law

---

**3.** The Firearms Policy Coalition, Inc., the Firearms Policy Foundation, the Calguns Foundation, the California Association of Federal Firearms Licensees, Inc., and Brandon Combs, an officer and founder of several of the organizational plaintiffs.

as to jurisdiction *de novo.*" *Ramirez-Molina v. Ziglar*, 436 F.3d 508, 513 (5th Cir. 2006) (citations omitted).

"The twist in this case is the transfer to a district court outside the Fifth Circuit, a court over which this court exercises no control. This court lacks power to order a return of the case to our circuit." *Bruck*, 30 F.4th at 423. Because of the transfer, the Western District of Texas "can no longer enter an appealable order in the case." *Id.* at 424. In *Bruck*, we attempted to resolve the issue by ordering the district court to vacate its ruling and to request the transferee court to return the case. *Id.* at 423–24, 436. Nevertheless, the New Jersey transferee court has refused,[4] so plaintiffs remain in a bind.

As a result, plaintiffs have advanced two procedural theories to establish that the district court now has jurisdiction over their new request for a preliminary injunction against NJAG. One is that our court's order to vacate the district court's sever-and-transfer order automatically "revived" plaintiffs' claims against NJAG by operation of law. The second is that Federal Rule of Civil Procedure 15 allows plaintiffs to "refile" their claims against NJAG, and they did so when they requested leave to amend to add NJAG to the existing case against the State Department in the Western District of Texas.

We face a jurisdictional thicket. On the one hand, claims that we have found were wrongly severed from an existing case in this circuit are now being adjudicated improperly in New Jersey. That creates an erroneous absence of claims in the Western District of Texas and, concurrently, an errant presence of claims against NJAG in New Jersey. The breakdown in comity across courts only adds more thorns to this tangle.

Still, we cannot declare that claims in the New Jersey district court were duplicated or refiled in some fashion in Texas. Injunctive relief is not available under plaintiffs' novel theories.

A.

Plaintiffs allege that when we issued *Bruck*, the entry of the order vacating the district court's sever-and-transfer order automatically revived plaintiffs' claims against NJAG in the Fifth Circuit. Plaintiffs defend that contention by pointing to the black-letter-law definition of vacatur:

> When a judgment has been rendered and later set aside or vacated, the matter stands precisely as if there had been no judgment. The vacated judgment lacks force or effect and places the parties in the position they occupied before entry of the judgment, with the underlying case and the original pleadings intact.

47 Am. Jur. 2d *Judgments* § 676 (2009) (citations omitted).

**[2]** Essentially, vacatur would reestablish the *status quo ante*: Vacated orders are immediately "null and void." *United States v. Moree*, 928 F.2d 654, 656 (5th Cir. 1991). Before the severance and transfer, there was a case in the Western District of Texas, with claims against both NJAG and the Department of State. Afterward, to recreate the status quo, the case with claims against NJAG and the Department of State must be present again in the Western District of Texas.

**[3]** Plaintiffs cite *Diece-Lisa Industries, Inc. v. Disney Enterprises, Inc.*, 943 F.3d 239 (5th Cir. 2019), as the most procedurally analogous case. They rely on it for the proposition that vacatur of a party-changing order automatically restores par-

---

**4.** *See Platkin-D.N.J.,* 2022 WL 2967304, at *35–36.

ties and claims to where they were before the vacated order. That contention is true in a typical, run-of-the-mill case, such as the intellectual property claims at issue in *Diece-Lisa*.[5] In a vacuum, the vacatur of a judgment restores the status quo.

**[4]** But plaintiffs fire a blank when extending *Diece-Lisa* to vacatur of a case that calls into question the territorial limitations of this circuit's power. In *Diece-Lisa*, a district court misused judicial discretion to dismiss an amended complaint that added new defendants. *See id.* at 253–55. *Diece-Lisa* restored the status quo through vacatur by reinstating the defendants to the case so that the district court could properly rule on its jurisdiction over them and the validity of the claims against them. *See id.* At no point were claims against defendants removed from the court's jurisdictional control. The addition of parties in *Diece-Lisa*'s vacated order, as compared to the improper subtraction of a party with a subsequent jurisdiction transfer here, is a distinction with a difference.

Indeed, transferring the case out of our territorial jurisdiction is the crux of the issue. In *Bruck*, we cited *Red Barn*, which stated that "[i]t seems uncontroversial in this situation that a transfer to another circuit removes the case from our jurisdiction, and numerous circuits have stated that rule plainly." *Red Barn*, 794 F.3d at 484 (citations omitted); *see also Bruck*, 30 F.4th at 423–24. "Once the files in a case are transferred physically to the court in the transferee district, the transferor court loses all jurisdiction over the case." *Chrysler Credit Corp. v. Country Chrysler*, 928 F.2d 1509, 1516–17 (10th Cir. 1991) (collecting cases). For that reason, in *Bruck*, the issuance of the mandamus merely ordered that the district court *request* the return of the case from New Jersey—nothing more. *Bruck*, 30 F.4th at 436–37; *see also Chrysler*, 928 F.2d at 1516–20.

There was a solution to the jurisdictional morass in which plaintiffs found themselves: They could have moved for a stay of the district court's transfer order before the case was transferred. Now, that is not necessarily fair to plaintiffs, who had little reason to believe that in the worst-case scenario, an outside transferee court would refuse a request to return an improperly transferred case. *See Platkin*, 48 F.4th at 608 (Ho, J., joined by Elrod, J., concurring) ("[W]e're unaware of any district court anywhere in the nation to have ever denied such a request. The parties admit they have not found any.").

As we have made clear, plaintiffs have acted with diligence, and "[n]othing in applicable precedent ... mandates the particular method by which a party disadvantaged by an out-of-circuit transfer must bring that issue to the circuit court." *Bruck*, 30 F.4th at 425. It is unfortunate that these otherwise valid claims cannot currently be heard in the court chosen by plaintiffs, given that a plaintiff is the "master of the claim." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987). Yet here, the failure to seek a stay appears fatal to their novel revival theory.

Plaintiffs attempt to get around that tricky territorial issue by positing that we do not need to "bring back to Texas the claims that are in New Jersey." Instead, vacatur would "recreat[e] claims against [NJAG] in Texas." The claims in New Jersey against NJAG can remain there

---

**5.** *Diece-Lisa* involved a suit by the owner of the "Lots of Hugs" trademark, used in stuffed bear toys, against subsidiaries of Disney for trademark infringement. The trademark owner alleged that Disney entities infringed on the trademark by using a "Lots-O'-Huggin' Bear" ("Lotso") character in *Toy Story 3* and associated merchandise. 943 F.3d at 243–44.

and be dealt with separately. Plaintiffs, in essence, theorize that transferring the case to New Jersey created a new case there, with no impact on the transferred case in the Western District of Texas.

**[5]** The contention is a reach. NJAG was marked as terminated on the docket sheet, and the physical (or electronic) transfer of the docket is not a mere formality. The transfer ended our control over the case. *Bruck*, 30 F.4th at 423; *see also In re Sw. Mobile Homes, Inc.*, 317 F.2d 65, 66 (5th Cir. 1963) (per curiam) (holding that once the transferee court has physically received the papers governing the case, the transferor court loses jurisdiction). Accordingly, "[a] court acting under § 1404(a) may not transfer part of a case for one purpose while maintaining jurisdiction for another purpose; the section 'contemplates a plenary transfer' of the entire case." *Chrysler*, 928 F.2d at 1518–19 (quoting *In re Flight Transp. Corp. Sec. Litig.*, 764 F.2d 515, 516 (8th Cir. 1985)).

**[6]** Note that "[t]he severed case is transferred in its entirety while the retained case remains in its entirety in the transferor court." *Id.* at 1519 (citing 15 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 3845 (4th ed. 2008)). That happened here. The case against NJAG was severed and transferred in its entirety to the District of New Jersey. Although this court has politely requested that the New Jersey district court return the case, we can do no more. That case exists in New Jersey, and the retained case against the U.S. Department of State, *sans* claims against NJAG, remains in the Western District of Texas.

Statutory authority goes nowhere, either. Section 1404(a) contains no allusions to any revival-of-claim theories.[6] Plaintiffs have not shown a single example of any case in any circuit where a court recreated claims that were transferred to another district. We are unaware of any paradigmatic cases either.

We are sympathetic to plaintiffs' concerns, and a transfer, which this court has asked for from the New Jersey district court, would resolve the issue neatly. Nevertheless, under current statutory law and caselaw, the status quo before the erroneous sever-and-transfer order cannot be recreated. This court cannot reconstitute claims that exist elsewhere, and plaintiffs' novel revival theory does not currently have a legal basis.

### B.

Plaintiffs alternatively allege that we have jurisdiction over their claims against NJAG because plaintiffs properly presented their claims by requesting leave to amend their complaint to re-add NJAG as a party to the case via Federal Rule of Civil Procedure 15(a)(2). Plaintiffs claim they properly asked for leave of court by mentioning the request in a footnote in their motion for a preliminary injunction after the district court had transferred the NJAG claims to New Jersey. They also assert that they asked again for leave of court to amend the pleadings to add NJAG as a party in their Motion to Grant as Unopposed or Set a Hearing.

Plaintiffs aver that Rule 15 is well understood to permit a plaintiff to add defendants. And because the court's obligation to exercise jurisdiction is "virtually unflag-

---

6. It states only, *"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."* 28 U.S.C. § 1404(a).

ging,"[7] the district court was required to adjudicate the point and then grant the leave to amend, as district courts should "freely give leave when justice so requires." FED. R. CIV. P. 15(b)(2). Plaintiffs allege that the district court failed to provide an adequate reason to deny leave, and the record contains none. Additionally, plaintiffs contend that they properly served NJAG with the filings through the Electronic Case Files ("ECF") system, which plaintiffs claim is standard for parties that have waived objections to the absence of summons or service.

[7] "Ordinarily, this [C]ourt reviews the denial of a motion for leave to file an amended complaint for abuse of discretion. However, where, as here, the district court's denial of leave to amend was based solely on futility, we apply a *de novo* standard of review . . . ." *City of Clinton v. Pilgrim's Pride Corp.*, 632 F.3d 148, 152 (5th Cir. 2010) (citing *Wilson v. Bruks–Klockner, Inc.*, 602 F.3d 363, 368 (5th Cir. 2010)) (emphasis added). "This [C]ourt may affirm the district court's dismissal 'on any grounds supported by the record.' " *Id.* at 153 (quoting *Hosein v. Gonzales*, 452 F.3d 401, 403 (5th Cir. 2006) (per curiam)).

Plaintiffs' argument is off target. As discussed above, the district court was correct that it did not have jurisdiction over NJAG after the transfer, and that remains so: The transfer of the case files to the district court in New Jersey ended the power of this circuit over the transferred claims. *Bruck*, 30 F.4th at 433. Again, the sever-and-transfer order created two separate suits: one in New Jersey where NJAG was a party and one in Texas where NJAG was not.

*Bruck* delineated the path the case would need to take to proceed in Texas: The district court was to request the return of the case from New Jersey, and, upon transfer back to Texas, the case was to be reconsolidated with the case against the Department of State. *Id.* at 436–37. This court did not foresee any other alternative, and an attempt to refile the same case in the transferor forum would conflict with our first-to-file rule.

[8–11] "Under the first-to-file rule, when related cases are pending before two federal courts, the court in which the case was last filed may refuse to hear it if the issues raised by the cases substantially overlap." *Cadle Co. v. Whataburger of Alice, Inc.*, 174 F.3d 599, 603 (5th Cir. 1999) (citations omitted). Courts "prophylactically refus[e] to hear a case raising issues that might substantially duplicate those raised by a case *pending* in another court." *Id.* at 604. The rule is intended to "maximize" "the values of economy, consistency, and comity."[8] *Id.* That prudential rule

---

7. *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 77, 134 S.Ct. 584, 187 L.Ed.2d 505 (2013) (quoting *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976)).

8. In *Cadle*, the court held that the district court with the second-filed action erred in dismissing the action without transferring it to the first-filed court to "decide whether the second suit filed must be dismissed, stayed, or transferred and consolidated." 174 F.3d at 606 (quoting *Sutter Corp. v. P & P Indus., Inc.*, 125 F.3d 914, 920 (5th Cir. 1997)). The present case is distinguishable because plaintiffs did not properly present the case before the Western District of Texas the second time, and the same case was already transferred to New Jersey. Unlike in *Cadle*, the question presented is not how to proceed with "subsequentially filed cases involving substantially similar issues," 174 F.3d at 606 (quoting *Save Power Ltd. v. Syntek Fin. Corp.*, 121 F.3d 947, 948 (5th Cir. 1997)), but instead how to deal with the same case that has already been transferred out of the forum. It would defeat the rule's animating purpose of promoting judicial economy to force the Western District

alone is reason enough to reject plaintiffs' refiling theory.

Additionally, nothing that occurred after the transfer made NJAG a party to the remaining suit in Texas against the Department of State. First, it is improbable that inserting a request to grant leave of court to amend a pleading inside a footnote in a preliminary injunction motion is proper or follows the local rules. *See* W.D. TEX. CIV. R. 7.[9]

Moreover, plaintiffs have pointed to no cases indicating that a court must allow a plaintiff to re-add a party to a complaint that was severed and transferred out of the jurisdiction. Plaintiffs' chosen cases do not address whether a court can, let alone must, allow a plaintiff whose case has been transferred out of the circuit to refile the same claims.

These alone decide the issue, without even going into the tenuous theory that continuously mentioning a previously terminated party in captions at the district court level without leave of court satisfies the rules for service of process. In response, plaintiffs point to at least four cases where NJAG added additional parties to an existing federal civil action and served the motion through the ECF system under Rule 5. Those examples are hollow. NJAG sought leave of court to intervene in each case instead of attempting unilaterally to re-add a previously terminated party.

As discussed above, the termination of a party is not a mere formality. It brings into question important prudential considerations, and endorsing plaintiffs' theory would encourage future plaintiffs dissatisfied with transfer decisions to bring duplicative cases continuously. Our circuit has never held that is permissible. Moreover, the district's local rules for properly presenting claims before the court are entitled to respect.

### III.

[12] So NJAG prevails. But there are prudential concerns with our ruling. As stated before, it is well established that a plaintiff is the "master of the claim." *Caterpillar*, 482 U.S. at 392, 107 S.Ct. 2425. This court has already found that the claims against NJAG should be heard in the Western District of Texas. As a matter of fairness to plaintiffs, their claims against NJAG should be heard in Texas. They chose to file in the Fifth Circuit, and it took an erroneously granted sever-and-transfer motion to move their claims to New Jersey. *Bruck* remains the law of this circuit: Plaintiffs' claims against NJAG should be heard in the Western District of Texas.[10]

[13] Courts have incorrectly transferred cases out of their jurisdiction in the past; this case is not a new phenomenon. *See Platkin*, 48 F.4th at 607–08 (Ho, J., joined by Elrod, J., concurring) (collecting cases). Comity is an old concept as well: "[A] term of international law ... [whose] best definition, in light of the derivation of

---

of Texas to transfer the same claims it already transferred to New Jersey every time the plaintiff moves to do so. It would create a procedurally recursive loop.

9. *"*When a motion for leave to file a pleading, motion, or other submission is required, an executed copy of the proposed pleading, motion, or other submission shall be filed as an exhibit to the motion for leave.*"*

10. The rule of orderliness means that *"*one panel of our court may not overturn another panel's decision, absent an intervening change in the law, such as by a statutory amendment, or the Supreme Court, or our *en banc* court.*"* *Jacobs v. Nat'l Drug Intel. Ctr.*, 548 F.3d 375, 378 (5th Cir. 2008) (citation omitted).

the word, is 'courtesy.'" Arthur March Brown, *Comity in the Federal Courts*, 15 Harv. L. Rev. 589, 589 (1915).[11]

When faced with inter-circuit splits in jurisdiction, courts have returned the cases to the transferor district in the interest of comity. Neither side has been able to state a single case in which a transferee court did not transfer back a case that a transferor court requested. *See Platkin*, 48 F.4th at 608 (Ho, J., joined by Elrod, J., concurring).

[14] Instead, the expectation is that circuit courts direct "the transferor district court to request that the transferee district court return the case." *Bruck*, 30 F.4th at 424 (citing *Red Barn*, 794 F.3d at 484 (collecting cases)). That tradition neatly balances the jurisdictional powers of the separate circuits with a culture of mutual respect between the sister circuits. The refusal of the District of New Jersey to retransfer is unprecedented in that regard.

The New Jersey court contends that the initial fault was in our decision to grant mandamus in *Bruck*. "[T]he purported lack of precedent with respect to this Court's refusal to transfer is preceded by the lack of precedent as to the mandamus vacating the original severance and transfer order when jurisdiction had been divested." *Platkin*, 2022 WL 14558237, at *4 (citations omitted). Still, regardless of the merits of *Bruck*, it took an error for the New Jersey court even to hear the case in the first place. The matter originated in the Western District of Texas and "only ended up in the transferee court as a result of mistake." *Platkin*, 48 F.4th at 608 (Ho, J., joined by Elrod, J., concurring). More importantly, the effect of that decision permits a New Jersey district court functionally to nullify a Fifth Circuit decision.

The judgment is AFFIRMED.[12]

---

11. Comity is not a binding rule of law but "one of practice, convenience, and expediency." *Mast, Foos, & Co. v. Stover Mfg. Co.,* 177 U.S. 485, 488, 20 S.Ct. 708, 44 L.Ed. 856 (1900).

12. Plaintiffs moved for an injunction pending appeal and to expedite the appeal and to expedite a ruling on the motion. A motions panel granted the motion to expedite the appeal and carried the remaining requests with the case. Those remaining requests are DENIED.



**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Donald E. JONES, Jr., Defendant-Appellant.**

No. 21-3910

United States Court of Appeals, Sixth Circuit.

Decided and Filed: December 13, 2022

**Background:** Following denial of his motion to suppress evidence, defendant was convicted in the United States District Court for the Northern District of Ohio, Dan Aaron Polster, J., of felon in possession of firearms and ammunition, possession with intent to distribute heroin and fentanyl, possession with intent to distribute tramadol, and possession of a firearm in furtherance of a drug trafficking crime. Defendant appealed.

**Holdings:** The Court of Appeals, Larsen, Circuit Judge, held that:

(1) police officers had sufficient probable cause to stop defendant's vehicle;